IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER TYLER DUNSWORTH, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-17-895-D |
| NATIONAL OILWELL VARCO, L.P., d/b/a NOV TUBOSCOPE MACHINING, | ) ) ) ) | |
| Defendant. | ) | |

# **O R D E R**

This matter comes before the Court on Defendant National Oilwell Varco, L.P.'s Motion for Summary Judgment [Doc. No. 41], filed pursuant to Fed. R. Civ. P. 56 and LCvR56.1. Defendant seeks a judgment in its favor on Plaintiffs' claims of disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Alternatively, Defendant seeks a determination that Plaintiffs cannot recover backpay or punitive damages as a matter of law and that Plaintiffs failed to mitigate their damages.

Plaintiffs Christopher Dunsworth and Shawn Shelton have filed a joint response in opposition to the Motion, disputing both that Defendant is entitled to summary judgment on their ADA claims and that Defendant is entitled to a determination of any damages issues. *See* Pls.' Resp. Br. [Doc. No. 47]. Defendant has filed a timely reply brief [Doc. No. 55]. Thus, the Motion is fully briefed and at issue.

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In appropriate circumstances, a party may obtain summary judgment on a part of a claim or a defense. *See id.*; *see also Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("defendant may use a motion for summary judgment to test an affirmative defense").

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the

cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52.

Through its Motion, Defendant asserts as one basis for summary judgment that Plaintiffs cannot recover back pay, nor seek reinstatement or front pay, because they rejected an unconditional offer of reinstatement that was made on the same day their employment ended. Defendant relies on a legal rule announced in *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), which is an affirmative defense to liability. *See Giandonato v. Sybron Corp.*, 804 F.2d 120, 122 (10th Cir. 1986); *see also Anastasio v. Schering Corp.*, 838 F.2d 701, 707-08 (10th Cir. 1988). "Where, as here, a defendant moves for summary judgment to test an affirmative defense, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.' Once the defendant makes this initial showing, 'the plaintiff must then demonstrate with specificity the existence of a disputed material fact.'" *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (quoting *Hutchinson*, 105 F.3d at 564).

### Statement of Undisputed Facts[1]

Plaintiffs worked for Defendant as temporary contract workers in jobs they obtained through a staffing agency on the recommendation of a former high school classmate, Jacob

---

[1] This statement includes facts that are material to the issues raised by Defendant's Motion, properly supported by the asserting party, and not opposed in the manner required by Rule 56(c). All facts are stated in the light most favorable to Plaintiffs.

Folmar. Folmar was the plant manager of Defendant's manufacturing facility in Oklahoma City where a division of the company, Tuboscope, makes parts that Defendant uses to provide oilfield services. The relevant facts are straightforward and largely undisputed.

In August 2013, Plaintiffs learned of job openings at Defendant's facility through Folmar, with whom they had remained in contact after high school through social media. Folmar was aware Plaintiffs had performed military service and were veterans, but he did not know they had been discharged with disability ratings from the Department of Veterans Affairs ("VA"). Plaintiff Christopher Dunsworth met with Folmar and discussed available positions. Dunsworth did not mention during the conversation any physical impairment or issues related to an injury during his military service; he had previously performed oilfield service work and other work without experiencing issues due to that injury.

Defendant had a contract with SOS Staffing Services, Inc. ("SOS Staffing") to provide personnel for the Tuboscope facility. Dunsworth applied for employment at Tuboscope's facility through SOS Staffing on August 12, 2013, and Plaintiff Shawn Shelton applied on August 15, 2013. On August 19, 2013, Dunsworth began working as a trainee on a computer numeric control machine. On August 26, 2013, Shelton began working as a trainee on a manual machine. Plaintiffs carpooled to work together after Shelton was hired.

Defendant required all workers at its Tuboscope facility to attend a one-day safety orientation before starting work. During Plaintiffs' safety training, they were asked (like all new workers) to disclose any medications that could cause a safety issue. Shelton told the Tuboscope safety representative, Andrew Lee, that he was not taking any medications.

4

At some point, Dunsworth informed Lee about the prescription medications he received through the VA by showing them to Lee. Lee expressed concern about a pain medication that was prescribed for use on an as-needed basis. Dunsworth told Lee that he took it only at night because it caused drowsiness and helped him sleep. Plaintiffs were also instructed during their orientation to call in and speak to a supervisor or manager if they were going to be absent or late, and to request sick leave using a written form.

Folmar was not Plaintiffs' immediate supervisor or trainer. He did not interact with them directly except on August 26, 2013, Dunsworth told Folmar that he needed time off for a doctor's appointment and Folmar approved Dunworth's oral request to be absent. Also, on August 29, 2013, Folmar learned that Plaintiffs had failed to show up for work at their scheduled times without calling their respective supervisors or him about being tardy or absent, and Lee told Folmar about Dunsworth's prescribed pain medication.

Upset by the "no call no show" of workers whom he had recommended, Folmar reached out to Plaintiffs – first by attempting to call them and then by sending a group text message. The following exchange occurred beginning at 8:25 A.M.:

> Folmar: So I'm guessing u guys gave up on me or found something better? Hope everything works out for u guys
>
> Shelton: I overslept, ur text woke me up
>
> Folmar: Well I don't think it's gonna work out guys bc of the physical issues and needing to take pain meds for them. NOV is not a big fan of hiring people with physical disabilities. Sorry if I would have known about them before I would have said something to u guys.

5

Pl.'s Resp. Br., Ex. 1 [Doc. No. 47-1].  A short time later, Folmar sent an email message to SOS Staffing that similarly described what happened as follows:

> Tyler [Dunsworth] nor Shawn [Shelton] has shown or called today.  That's okay, figured something wasn't going to go right always happens with people you know from your past.  They also have some physical disabilities that they are taking pain meds for on [an] as needed basis and NOV is not a fan of that nor am I.  If I would have known this prior I would have never sent them or given them the offer.  So in need of machinist trainees and a QC lead person.

Pl.'s Resp. Br., Ex. 2 [Doc. No. 47-2].  Folmar has testified that these stated reasons for terminating Plaintiffs' work assignments were false, but he admits the statements were based on the fact that he learned that day about Dunsworth's use of pain medication and on his assumption that Plaintiffs had "physical issues."  *See* Folmar Dep. 27:5-28:5.

Later the same morning, Folmar discussed his actions with Tuboscope's division manager and realized the import of his statements.  Folmar then attempted again to reach Plaintiffs by telephone, and he sent another group text message at 11:49 A.M. stating:

> Just wanted [to] let u guys know the statement I made earlier was totally out of line.  I spoke with my boss and was hoping to talk to u guys to see if u just overslept or what's going on.  Want to try an[d] still make this work if u didn't find something else.

Pl.'s Resp. Br., Ex. 1.  Folmar also left voicemail messages for Plaintiffs, and Defendant communicated through SOS Staffing an unconditional offer to reinstate Plaintiffs to their assigned jobs.

Plaintiffs did not respond to Folmar's messages or act on Defendant's offer of reinstatement.  Instead, Plaintiffs informed SOS Staffing that they were not interested in

the offer. Plaintiffs also declined SOS Staffing's offer to place them with a different company. Plaintiffs did not attend a job interview that SOS Staffing had scheduled for August 30, 2013, and rejected subsequent efforts by SOS Staffing to secure them other employment.

Defendant conducted an internal investigation into Folmar's conduct and issued written discipline on October 28, 2013; it also required him to complete human resources training in November 2013. On September 26, 2013, both Plaintiffs filed EEOC charges alleging disability discrimination. This suit was timely filed after conciliation efforts failed and the EEOC issued notices of Plaintiffs' right to sue.

## Discussion

### A. Proof of Disability Discrimination

Plaintiffs claim Defendant engaged in intentional discrimination in violation of the ADA by terminating their employment assignments based on their perceived disabilities. The parties agree that "[a] plaintiff may prove discrimination through either direct or circumstantial evidence." *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1189 n.6 (10th Cir. 2007) (citing *Ramsey v. City of Denver*, 907 F.2d 1004, 1007-08 (10th Cir. 1990)). The parties disagree about whether Folmar's messages constitute direct evidence of disability discrimination. For reasons that follow, the Court agrees with Plaintiffs that Folmar's text message ending their work assignments at Tuboscope constitutes direct evidence. When a plaintiff "presents direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis doesn't apply." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875,

7

883 (10th Cir. 2018).[2] Thus, the Court does not reach the additional issues raised by Defendant's Motion regarding whether Plaintiffs can satisfy *McDonnell Douglas*.

"'Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons.'" *Fassbender*, 890 F.3d at 883 (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)). "Evidence of discrimination, if believed, is only direct evidence if it 'proves the existence of a fact in issue without inference or presumption.'" *Id.* (quoting *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)); *see Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007). Workplace comments that reflect personal bias of the speaker "do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). To qualify as direct evidence, "the context or timing of the [discriminatory] statements [must be] closely linked to the adverse decision." *Id.* Also, "if the content and context of a statement allow it to be plausibly interpreted in two different ways – one discriminatory and the other benign – the statement does not qualify as direct evidence." *Id.*

In *Tabor*, the Tenth Circuit found that "statements by a decisionmaker during an interview [for a job promotion] expressing discriminatory beliefs about whether members of the plaintiff's protected class [women] are capable of doing the job at issue" constituted direct evidence of gender discrimination in the decision not to promote the female job

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

candidate. *Id*. at 1217. The court determined that "the content of [the decisionmaker's] statements, the interview context, and the temporal proximity to the adverse employment decision directly link the discriminatory statements to his decision not to promote [the plaintiff]." *Id*.[3]

Similarly here, in the context of telling Plaintiffs that their jobs at the Tuboscope facility were not going to "work out," Folmar expressly stated it was because of "the physical issues and needing to take pain meds for them" and because Defendant did not favor "hiring people with physical disabilities." *See* Pls.' Resp. Br., Ex. 1. Folmar also stated he would not have encouraged Plaintiffs to apply for the jobs if he "would have known about [the physical issues] before." *Id*. A short time later, Folmar explained his decision to Plaintiffs' nominal employer, SOS Staffing, in similar terms. Viewed in the light most favorable to Plaintiffs, the Court finds these statements could reasonably be viewed as direct evidence of discriminatory intent by the decisionmaker, Folmar, to end Plaintiffs' job assignments at the Tuboscope facility based on a perceived disability.[4] Folmar's subsequent denial that the statements reflect the true reasons for his decision raises a credibility issue, but it does not prevent the statements from being considered as direct evidence of discrimination.

---

[3] The interviewer's statements related to the plaintiff's female gender and the job requirements of a sales position for manufactured tools for which she had applied; they concerned a woman's alleged lack of familiarity with tools, ability to learn about the tools, and availability for job-related travel. *See id.* at 1213.

[4] Defendant appears to admit that Folmar was the decisionmaker regarding Plaintiffs' employment at the Tuboscope facility. *See* Def.'s Mot. at 12.

9

Therefore, the Court finds that a genuine dispute of material fact exists and that summary judgment is inappropriate on Plaintiffs' disability discrimination claims.

## B. Plaintiffs' Recoverable Damages

### 1. Backpay

Regardless whether Plaintiffs can prove their claims of disability discrimination, Defendant asserts that they cannot recover any backpay (nor obtain reinstatement or front pay) based on a rule announced by the Supreme Court "that, absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241 (1982).[5]

Plaintiffs make no effective response to Defendant's assertion. They make a factually unsupported argument that they were uncertain about the terms of Defendant's offer of reinstatement. *See* Pls.' Resp. Br. at 26. This argument is based solely on Folmar's text message and ignores undisputed facts showing that Defendant extended an unconditional offer through SOS Staffing that Plaintiffs refused to entertain. Plaintiffs also argue that their strong emotional responses to Folmar's discriminatory statements raise a genuine issue as to whether rejecting the offer was reasonable. *Id.* at 26-27. The Tenth Circuit has held that personal reasons for refusing an offer, such as reluctance to work under a former supervisor or hurt feelings, are not "special circumstances" that prevent a forfeiture of backpay under *Ford*. *See Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir. 1986); *see also Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242,

---

[5] This rule is based on a "statutory duty to minimize damages," *id.* at 231 (citing 42 U.S.C. § 4000e-2(g)), and federal policy. *Id.* at 234-35.

1253 (10th Cir. 2004) ("an offer rejected solely for personal reasons will not avoid the rule set down in *Ford*").

The Court therefore finds that Plaintiff's have failed to demonstrate a genuine dispute of material fact regarding the application of the *Ford* rule. Defendant is entitled to a summary determination that Plaintiffs forfeited the right to recover backpay when they rejected Defendant's unconditional offer of reinstatement.[6]

### 2. Failure to Mitigate Damages

Defendant also asserts an affirmative defense to backpay liability that Plaintiffs failed to mitigate their damages by declining other employment opportunities provided by SOS Staffing, in addition to rejecting Defendant's reinstatement offer. *See* Def.'s Mot. at 26-27. To establish this defense, Defendant must prove that Plaintiffs did not "use reasonable efforts to mitigate damages." *See EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980); *see also McClure v. Ind. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). Under the circumstances of this case, where the Court has found that *Ford* applies and any backpay liability of Defendant ended when Plaintiffs rejected its offer of reinstatement, the Court need not reach this affirmative defense because it merely provides an alternative basis for the same ruling.

---

[6] Under *Ford*, a plaintiff's rejection of an offer of reinstatement tolls the accrual of backpay liability "as of the date the offer is rejected or expires." *See Albert*, 356 F.3d at 1253; *see also Ford*, 458 U.S. at 239 ("accrual of backpay liability is tolled when a . . . claimant rejects the job he originally sought"). Because it is unclear from the present record precisely when the rejection occurred, the Court does not attach a precise date to its ruling. Of course, a plaintiff "remains entitled to full compensation if he wins his case." *Id*. at 233-34. In this case, Plaintiffs seek to recover compensatory damages for emotional distress and punitive damages, discussed *infra*, in addition to lost pay.

11

### 3. Punitive Damages

"An ADA plaintiff may seek punitive damages if his employer acted with malice or with reckless indifference to the plaintiff's federally protected rights." *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1169 (10th Cir. 2006) (internal quotations omitted); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 914 (10th Cir. 2004); 42 U.S.C. § 1981a(b)(1). "To satisfy this standard, the employer must engage in prohibited conduct with knowledge that it may be acting in violation of federal law, not mere awareness that it is engaging in discrimination." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1254 (10th Cir. 2005). As a general rule, "where (1) there is sufficient evidence for the jury to decide whether an employer intentionally and illegally discriminated on the basis of a disability and (2) there is evidence that the employer knew the requirements of the ADA, it is proper for a punitive damages [issue] to go to the jury." *Heartway*, 466 F.3d at 1169; *see also EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1246 (10th Cir. 1999).

In this case, the Court has found that Plaintiffs' evidence presents a jury issue of whether Defendant engaged in intentional disability discrimination, and there is no question that Defendant knew the requirements of the ADA. However, Defendant raises a defense to punitive damages liability under *Kolstad*, which held "that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the

employer's good-faith efforts to comply with Title VII." *Kolstad*, 527 U.S. at 545.[7] Defendant argues "that Folmar's actions are wholly inconsistent with [Defendant's] good faith efforts as evinced by their [sic] numerous policies, procedures, trainings and postings at its job sites to ensure compliance with all federal law requirements, including the ADA." *See* Def.'s Mot. at 29.[8]

Under *Kolstad*, "at a minimum, an employer must at least adopt anti-discrimination policies and make a good faith effort to educate its employees about these policies and [the statute's] prohibitions." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1209 (10th Cir. 2002); *see McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) ("To avail itself of Kolstad's good-faith-compliance standard, an employer must at least 1) adopt antidiscrimination policies; 2) make a good faith effort to educate its employees about these policies and the statutory prohibitions; and 3) make good faith efforts to enforce an antidiscrimination policy."). In this case, the existing record contains no facts to show whether Defendant made any effort to educate Folmar about the ADA before he committed

---

[7] The Tenth Circuit has not decided whether "the *Kolstad* defense" is "an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1189 n.1 (10th Cir. 2007) (internal quotation omitted); *accord McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1137 n.3 (10th Cir. 2006). At this point, the Court need not reach this issue on the record presented.

[8] Defendant does not seem to dispute that a basis for punitive damages exists because the decisionmaker (Folmar) was "serving in a 'managerial capacity' [and] committed the wrong while 'acting in the scope of employment.'" *See Kolstad*, 527 U.S. at 543 (quoting Restatement (Second) of Agency § 217 C); *see also Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208–09 (10th Cir. 2002) (plaintiff must "demonstrate that the actions of the employee who discriminated against the plaintiff is a managerial agent who acted within the scope of employment").

the alleged violation. Therefore, the Court finds that the availability of punitive damages cannot be decided at this time as a matter of law.

## Conclusion

For these reasons, the Court finds that a genuine dispute of material fact precludes summary judgment on Plaintiffs' ADA claims and the issue of punitive damages but that Defendant is entitled to summary judgment on the issue of backpay liability. Plaintiffs cannot recover any backpay after the point at which they refused reinstatement to their jobs at Defendant's Tuboscope facility.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 41] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 24th day of May, 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE